## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF FLORIDA

MUSIC ROYALTY CONSULTING,
INC.,

      Plaintiff,

v.

WILLIAM RUDOLPH MCLEAN,

      Defendant.

Case No.

6:22-cv-2110

Hon.

2022 NOV 14   PM 4: 29

## COMPLAINT

Music Royalty Consulting, Inc. ("MRCI") complains against William Rudolph McLean ("Mr. McLean") as follows:

## THE PARTIES:

1.    MRCI is a corporation organized and existing under California law, with its principal place of business in Los Angeles, California.

2.    William Rudolph McLean is an individual person who is a resident of Orlando, Florida, which is within this judicial district.

## JURISDICTION AND VENUE:

3.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(1) because MRCI and Mr. McLean are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.    This Court has personal jurisdiction over the parties.

4893-9486-3664_6

5.      Venue is proper in this Court under 29 U.S.C. § 1391 because Mr. McLean resides in this judicial district.

## GENERAL ALLEGATIONS:

6.      MRCI is a music royalty buyout company, established approximately twenty years ago to provide funding to songwriters, musicians, artists, and other royalty earners.

7.      Mr. McLean is, upon information and belief, a member of a hip-hop musical group called Black Sheep that was formed in Queens, New York in the early 1990s. Black Sheep is best known for its 1991 composition called, "The Choice Is Yours (Revisited)," which was later featured in a television commercial for the 2010 Kia Soul.

8.      Between 2013 and 2017, Mr. McLean entered into three separate unambiguous written agreements with MRCI, as well as several extensions and modifications of those agreements. The primary difference between these agreements was the identity of the royalty source(s) identified by each. This action arises from Mr. McLean's breach of the second agreement, which pertains to royalties otherwise payable to Mr. McLean from the American Society of Composers, Authors and Publishers ("ASCAP") and SoundExchange, Inc. ("SOUNDEXCHANGE").

2

**The Contracts Between the Parties:**

**The First Written Agreement:**

9.      On or about December 20, 2013, Mr. McLean signed and entered into an unambiguous written agreement with MRCI entitled, "Irrevocable Royalty Purchase Agreement" (the "First Agreement"). Under the First Agreement, Mr. McLean sold to MRCI "all his income and royalties, otherwise payable" from Universal-Polygram International Publishing, Inc. ("UMPG") for a period of years. In 2017, Mr. McLean extended the First Agreement for an additional term of years.

**The Second Written Agreement:**

10.      On or about October 29, 2015, Mr. McLean signed and entered into a second unambiguous written agreement with MRCI entitled, "Irrevocable Royalty Purchase Agreement" (the "Second Agreement"). *See* **Exhibit A**, Second Agreement. Under the Second Agreement, Mr. McLean sold to MRCI "all (Mr. McLean's) right, title, and interest in, relating to, or deriving from any and all Works . . . including, without limitation, musical compositions and sound recordings." Ex. C, at p. 1, "Rights." The Second Agreement defined "Works" to include "all musical works (including any accompanying words); sound recordings; and all past, present, and future works that are derivatives of the foregoing (all of which are defined by the US Copyright Law)." *Id.* at "Works." The Second Agreement identified the "Sources" of the royalty payments as the American Society of Composers, Authors

3

and Publishers ("<u>ASCAP</u>") and SoundExchange, Inc. ("<u>SOUNDEXCHANGE</u>"). *Id.* at "Sources" (emphasis added).

11.    In the Second Agreement, MRCI "irrevocably and exclusively purchase[d] the Rights from (Mr. McLean) **for a period of ███████ years from the date of this Agreement**." *Id.* at ¶ 1, emphasis original. In exchange, MRCI made a significant lump-sum payment to Mr. McLean. *Id.* at. ¶ 7.

12.    In addition to this temporal limitation, the Second Agreement provided that the Rights would revert back to Mr. McLean's ownership after MRCI collected and retained "at least the sum of ██████ in Income." *Id.* at ¶ 1.

13.    Mr. McLean agreed "to fully cooperate in securing the acceptance and acknowledgement by ASCAP and SOUNDEXCHANGE of the transfer of the Rights to MRCI." *Id.* at ¶ 10(a).

14.    The Second Agreement provided that Mr. McLean has "a right to receive from MRCI 100% of all monies over and above the sum of ██████ er calendar year that MRCI receives and retains directly from" ASCAP and SOUNDEXCHANGE. *Id.* at ¶ 38. "In the event that MRCI has not received at least ██████ in any prior calendar year (with the exception of the first calendar year of 2016), such shortfall(s) shall carry over to the following calendar year(s), and <u>must be recouped before any royalty monies can be applied towards the Bonus Right</u>." *Id.*, emphasis added.

15.     In the event of default, Mr. McLean is liable for "all out-of-pocket costs and expenses (including without limitation the fees and disbursements of MRCI's counsel) of [MRCI] in connection with (a) the preservation of and enforcement of its rights under the agreement . . . (b) the collection of any sum which becomes due to MRCI in conjunction with the agreement; (c) the preservation of, processing of, development of, maintenance of, protection of, care for, and insurance of the Rights or MRCI's interest in the Rights and MRCI's assignment of the Rights; (d) the preparation for and participation in any commenced or threatened proceeding (including without limitation arbitration, lawsuit, counterclaim, appeal, or dispute as to the validity or priority of MRCI's rights deriving from this agreement) relating to [Mr. McLean]; and (e) the protection, preservation, and enforcement of any right or remedy of MRCI arising out of its relationship with Owner . . . ." *Id.* at ¶ 19.

16.     The Second Agreement provides for specific performance by Mr. McLean:

16. Specific Performance. By initialing below this paragraph, Owner certifies it has read, understood, and agreed to the following: Strict compliance shall be required with each and every provision of the agreement. Owner agrees and acknowledges that its interest and rights in the Rights are unique, that failures to perform the obligations provided by this agreement shall result in irreparable damage, that calculation of the monetary value of Owner's interest or rights in the Rights is difficult if not impossible because by its nature the value of the Rights is speculative, and that SPECIFIC PERFORMANCE OF THESE OBLIGATIONS MAY BE OBTAINED BY SUIT IN EQUITY.

Owner's initials [signature]

17.     As of the date of this Complaint, MRCI has not collected and retained ███████ from ASCAP and SOUNDEXCHANGE, nor has the ███████ period of the Second Agreement elapsed. As a result, the Rights have not reverted

4893-9486-3664_6

to Mr. McLean.

## The Third Written Agreement:

18.     On or about March 29, 2017, Mr. McLean signed and entered into a third unambiguous written agreement with MRCI entitled, "Irrevocable Royalty Purchase Agreement" (the "Third Agreement"). Under the Third Agreement, Mr. McLean sold to MRCI "all his income and royalties, otherwise payable" from UMG Recordings, Inc. / Island Mercury ("UMG").

## Mr. McLean Releases All Claims Against MRCI:

19.     On November 6, 2017, Mr. McLean entered into a "Ratification of Sale, Release of MRCI, and Termination of Bonus Right ('UMG Funding Agreement I')." *See* **Exhibit B**. In the UMG Funding Agreement I, Mr. McLean released MRCI:

> Seller (Mr. McLean) hereby releases Released Parties from any and all liability, claims, debts, costs, expenses, obligations, duties, demands, offsets, and causes of action (including attorneys' fees) whether known or unknown, asserted or unasserted, fixed or contingent, which Seller has or may have by reason of any matter, cause, or thing whatsoever occurred, done, omitted or suffered until the date of this UMG Funding Agreement I, including, but not limited to, the Purchase Agreement with MRCI.

> *Id.* at p. 1; *see also* "Released Parties."

20.     On the same date, Mr. McLean entered into a "Ratification of Sale, Release of MRCI, and Termination of Bonus Right ('Funding Agreement II')." *See* **Exhibit C**. Funding Agreement II contained a substantially identical Release as UMG Funding Agreement I, by which Mr. McLean released all claims against

4893-9486-3664_6

MRCI "until the date of this Funding Agreement II." *Id.* at p. 1, "Release of Liability."

21.     In each of the three unambiguous written Agreements, Mr. McLean agreed to "fully cooperate in securing the acceptance and acknowledgement" by royalty sources "of the transfer of the Rights to MRCI or an entity controlled by MRCI." *See e.g.* Ex. A, Second Agreement, at ¶ 10(a).

### Mr. McLean Breaches the Second Agreement:

22.     In 2018, Mr. McLean unilaterally and in violation of the Second Agreement directed SOUNDEXCHANGE (a royalty Source in the Second Agreement) to revert royalty payments to Mr. McLean, rather than to MRCI as required under the Second Agreement. *See* **Exhibit D, April 18, 2018 Email**.

23.     In 2021, Mr. McLean also contacted ASCAP (the other royalty Source in the Second Agreement) directly, and attempted to re-direct the royalty payments to Mr. McLean. As a result, ASCAP has frozen royalty payments.

24.     During this period, MRCI attempted to resolve its dispute with Mr. McLean without litigation, without success. Mr. McLean attempted to justify his breach of the Second Agreement by making specious claims.

25.     On August 30, 2022, MRCI, through undersigned counsel, sent payment demand correspondence to Mr. McLean, demanding that Mr. McLean immediately pay to MRCI all royalties that Mr. McLean had diverted in clear

4893-9486-3664_6

violation of the Agreements and request ASCAP and SOUNDEXCHANGE to direct future royalty payments to MRCI, as required by the Second Agreement. *See* **Exhibit E, August 30, 2022 Demand Correspondence**.

26.     In violation of the Second Agreement, Mr. McLean refuses to pay to MRCI the royalty payments that he diverted to himself, and refuses to direct royalty sources to make royalty payments to MRCI.

27.     Mr. McLean materially breached the Second Agreement.

28.     Under the Second Agreement, Mr. McLean has agreed that his performance under the Second Agreement is properly subject to specific performance, and that he is liable for MRCI's costs incurred in enforcing its rights under the Second Agreement. Both remedies in addition to monetary damages sufficient to assuage the harm to MRCI.

29.     Mr. McLean's material breaches caused MRCI to incur damages in an amount in excess of at least $150,000.00, excluding interest and costs that MRCI is entitled to recover under the Second Agreement.

**COUNT I:**
**BREACH OF CONTRACT**

30.     MRCI repeats and incorporates all of the allegations above as though fully set forth here again verbatim.

31.     Mr. McLean entered into several unambiguous written contracts with MRCI, under which MRCI agreed to buy, and Mr. McLean agreed to sell, royalty

8

rights from various Sources, including SOUNDEXCHANGE and ASCAP. *See* Exs. A, C, D.

32.    In the Second Agreement, Mr. McLean agreed to assign his ASCAP and SOUNDEXCHANGE royalty rights to MRCI, and to "fully cooperate in securing the acceptance and acknowledgement by ASCAP and SOUNDEXCHANGE of the transfer of the Rights to MRCI." Ex. C, at ¶ 10.

33.    Mr. McLean received a lump sum payment from MRCI under the Second Agreement.

34.    Mr. McLean breached the Second Agreement by diverting royalty payments due to MRCI from SOUNDEXCHANGE, and disrupting royalty payments due to MRCI from ASCAP.

35.    Mr. McLean's interference with MRCI's royalty rights constitutes material breaches of the Second Agreement.

36.    MRCI is entitled to immediate repayment in full of the diverted royalty payments, to recover its costs incurred in bringing this action, and to specific performance by Mr. McLean of his obligations under the Second Agreement.

37.    MRCI has been damaged as a result of Mr. McLean's breach of contract in an amount in excess of at least $150,000.00, plus interest at the statutory rate and costs as set forth in the Second Agreement.

4893-9486-3664_6

WHEREFORE, MRCI respectfully requests that the Court enter a judgment in its favor and against Mr. McLean in an amount in excess of $150,000.00, plus the costs incurred by MRCI, subject to interest at the statutory rate until the judgment is paid in full, and award to MRCI all such other relief as may be appropriate.

## COUNT II:
## DECLARATORY JUDGMENT

38.     MRCI repeats and incorporates all of the allegations above as though fully set forth here again verbatim.

39.     In the Second Agreement, Mr. McLean agreed to convey all royalty rights with SOUNDEXCHANGE and ASCAP to MRCI, and to execute such documents as may be necessary to identify MRCI as the payee for Mr. McLean's royalty rights.

40.     As set forth above, Mr. McLean's unilateral communications to ASCAP and SOUNDEXCHANGE constitute material breaches of the Second Agreement, and were not authorized or consented-to by MRCI.

WHEREFORE, MRCI respectfully requests that the Court enter an order:

A.     Declaring that Mr. McLean's attempt to reassign royalty rights to himself constitutes a material breach of the Second Agreement;

B.     Declaring that Mr. McLean did not have the authority to reassign the royalty rights to himself;

C.     Invalidating any attempt to reassign the royalty rights from MRCI to

10

Mr. McLean;

D.     Enjoining Mr. McLean from making any further effort to interfere with MRCI's rights under the Second Agreement;

E.     Awarding MRCI its costs incurred in this action; and

F.     Awarding MRCI such additional relief as may be appropriate.

## COUNT III:
## SPECIFIC PERFORMANCE

41.    MRCI repeats and incorporates all of the allegations above as though fully set forth here again verbatim.

42.    Mr. McLean entered into several unambiguous written contracts with MRCI, under which MRCI agreed to buy, and Mr. McLean agreed to sell, royalty rights from various Sources, including SOUNDEXCHANGE and ASCAP. *See* Ex. A.

43.    As set forth above, Mr. McLean has materially breached the Second Agreement.

44.    Mr. McLean agreed that his "interest and rights in the Rights are unique, that failures to perform the obligations provided by this agreement shall result in irreparable damage, (and) that calculation of the monetary value of (Mr. McLean's) interest or rights in the Rights is difficult if not impossible because by its nature the value of the Rights is speculative." Ex. A, at ¶16.

45.    The Second Agreement is both reasonable and supported by adequate

consideration, as Mr. McLean received a significant lump sum payment from MCRI as consideration for his royalty rights.

46.     MRCI's remedies set forth in the Second Agreement are mutual.

47.     Mr. McLean agreed to "fully cooperate in securing the acceptance and acknowledgement by ASCAP and SOUNDEXCHANGE of the transfer of the Rights to MRCI," and to "fully cooperate in the assignment to MRCI of all Rights being purchased, and the execution of all necessary documents, including notices of assignment and irrevocable letters of direction to the applicable performing rights organizations to enable MRCI to acquire (Mr. McLean's) interest in the Right's [*sic*] purchased hereunder." *Id.* at ¶ 10.

48.     The specific performance sought is exactly the same performance that Mr. McLean agreed to when he executed the Second Agreement.

WHEREFORE, MRCI respectfully requests that the Court enter an Order directing Mr. McLean to perform his obligations under the Second Agreement, specifically directing ASCAP and SOUNDEXCHANGE to direct future royalty payments to MRCI, including by executing any document required by either royalty Source to effectuate the transfer of royalty payments, award MRCI its costs incurred in this action, and award to MRCI all such other relief as may be appropriate.

4893-9486-3664_6

Respectfully Submitted,

BODMAN PLC

By: /s/ *Stephen P. Dunn*
    Stephen P. Dunn (MI ID: P68711)
    Erica J. Shell (MI ID: P80106)
    201 W. Big Beaver, Suite 500
    Troy, Michigan 48084
    (248) 743-6002
    sdunn@bodmanlaw.com
    eshell@bodmanlaw.com
    *Attorneys for Plaintiff*

Dated:   November 9, 2022

4893-9486-3664_6